## Ex parte LEBSACK.
## LEBSACK v. HERGERT et al.

No. 22073.    May 22, 1934.

C. N. Ernest and Breeden & Breeden, for plaintiff in error.

Ridings & Drennan, for defendant in error.

RILEY, C. J. This is an appeal from a decree denying a petition of Emanuel Lebsack for the custody of his minor son, Murl Lebsack. Emanuel Lebsack and Bessie Hergert were married in August, 1925. His home was at Otis, Kan. Bessie was the daughter of G. A. and Mrs. G. A. Hergert. Their home is at Pond Creek, Okla., a distance of about 235 miles from Otis, Kan.

The young couple, after marriage, lived for some two years at Otis, Kan. Sometime in the fall of 1926, Bessie became ill and was sent to a hospital, where an operation was performed. The child was born August 5, 1927. After the child was born the physicians determined that the mother had contracted tuberculosis, from which she died on May 20, 1930.

The petitioner took her to Colorado, where she remained for awhile. But after tuberculosis developed the mother and child for the most part lived with her parents, respondents herein.

The respondents nursed and cared for the mother and child during this time. Petitioner continued to live in Kansas, visiting his wife and child several times.

After the death of the child's mother, the father, Emanuel, requested the custody of the child, which was refused, and this action was commenced by habeas corpus proceedings.

Defendants in their response alleged, in substance, that in the year 1929, petitioner, Emanuel Lebsack, abandoned said Murl Lebsack and his mother and contributed nothing to their support, and that respondents had cared for said child and its mother up to the time of her death, and:

"4. And for further answers and response the said G. A. Hergert and Mrs. G. A. Hergert allege and state that the petitioner herein is not a fit and proper person to have the care, custody, and control of said minor child, that he has no place to take said child and is not able to provide for the said child, and that he has never provided for the said child, and that it is for the best interests of the said child that it be left with the respondents in this case."

These allegations being denied by petitioner, the cause was tried to the court, resulting in an order denying the writ, and petitioner appeals.

The trial court made no findings as to the allegations of abandonment, but found that: "Petitioner is not a fit and proper person to have the care, custody, and control of said minor child, Murl Lebsack."

The child was accordingly awarded to the care and custody of respondents, G. A. Hergert and Mrs. G. A. Hergert.

The principal contention is that the findings and judgment of the trial court are contrary to and against the great weight of the evidence, and consequently contrary to law.

From the standpoint of financial ability of the respective parties to maintain and care for the child, the evidence is about equal.

The finding of the court that petitioner is not a fit and proper person to have the care, custody, and control of said minor child is based largely upon his attitude toward, and his treatment of the mother and child from the time it was ascertained that the mother was afflicted with tuberculosis to the time of her death.

Soon after it was ascertained that the mother had contracted tuberculosis she came to Oklahoma to her parents, and outside of an occasional visit by petitioner the duty of looking after and caring for the afflicted mother and the infant child rested upon her

father and mother. They took her to El Paso in an effort to restore her to health. They paid practically all the expenses. When petitioner did visit her, he worried and harassed her by frequent threats to take the child away from her. He wrote her a few letters. In one he expressed himself as being disgusted about her and himself, and asked her if she could not see her way clear to give him a divorce, and in the course of the letter indicated very strongly that the reason he desired a divorce was fear that he would contract the disease. At no time did he express affection for her. True he permitted her to draw a number of small checks against his account in the bank. On April 29th, but three weeks before her death, he wrote her what the trial court termed a cold-blooded, cruel, and heartless letter. At that time he knew his wife was upon her deathbed, but the letter contained no word of sympathy, comfort, or affection. There petition stated:

"But mostly what I wanted to tell you is please don't write no more checks cause you have been overdrawing me rite along cause I never keep but very little funds if any at the bank and this week you have overdrawn my account plenty and I don't want this to happen no more if you can't write and tell me what you want it for, and how much, why its too bad. Henry owes me money and all that but he is just as hard up as anyone else right now and besides I have quit Harder so rite no checks cause they are void."

This wife, while possessed of health and strength, had gone into a restaurant and worked for the success of the marriage venture.

A number of witnesses testified to the good character and exemplary life of petitioner, and all these things were taken into consideration by the trial court.

It may be conceded that the evidence shows petitioner to have a good character and standing among his neighbors.

In commenting upon the actions and conduct of petitioner toward his wife and child, the trial court said:

"That being his sense of duty to his wife, what would he do with the child? I don't think he could, possibly, think any more of the child at this time than he did of his wife when he married her. * * * If he would quit his wife in a condition like that, what would he do with the child if he got it back?"

We bear in mind that petitioner is seeking merely to transfer the care and custody of the child from the maternal grandparents, who had nurtured and cared for it from its infancy, to the paternal grandparents.

The trial court had all the parties before it, and had an opportunity to observe their conduct and demeanor, and now considering that the welfare of the child as well as the wishes of the parties is of importance, we are not willing to say that the judgment is contrary to the weight of the evidence or contrary to law.

Judgment affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, and OSBORN, JJ., concur.