POTTER v. POTTER et al.

No. 33749.   June 20, 1950.

*219 P. 2d 1011.*

H. G. E. Beauchamp, of Miami, for plaintiff in error.

Charles C. Chesnut, of Miami, for defendants in error.

GIBSON, J. This is an appeal by a divorced parent from an order of court

denying his application for the permanent custody of his two daughters, then in the temporary custody of others under prior commitment of the court.

Plaintiff in error, Cecil Potter, and defendant in error, Vera Potter, were formerly man and wife, and of the marriage there were born four children, named and aged, as of the date of the judgment appealed from, as follows: Cecilia Jane (daughter), 7; Harold Loyd (son), 6; Ivan Ernest (son), 4, and Saundra Ray (daughter), 3.

June 11, 1946, Vera Potter, as plaintiff, was awarded a divorce from Cecil Potter, defendant therein, and the permanent care and custody of the four children. By the terms of the decree the defendant was ordered to pay to plaintiff $20 weekly for support, maintenance and education of the children. Defendant neglected and failed to make the payments ordered and upon application of the plaintiff he was cited by the court to show cause why he should not be adjudged in contempt. The matter was heard on February 14, 1947, at which time the court, of its own volition, modified the decree by taking the permanent custody of the children from the mother and granting their temporary care and custody to defendants in error Lena Kester and Edward Kester, the maternal grandmother and step-grandfather, and without right of the mother to reside with or exercise any control over them. The court found that the defendant, Cecil Potter, had failed to pay the support money as ordered but that he could discharge his liability therefor by paying to the clerk of the court the lump sum of $200. The court further ordered that thereafter, during the minority of the children, the defendant pay to said clerk the sum of $15 per week and that, upon his compliance therewith, the defendant should be permitted to visit and be visited by the children at designated times.

On July 24, 1947, defendant, upon the one hand, and Lena and Edward Kester, upon the other, and without Vera Potter being a party thereto, entered into an agreement in writing concerning the care, custody and maintenance of the children, which was submitted to and approved by the court. Under the terms thereof the defendant was to have the exclusive care and custody of the two boys, Harold Loyd and Ivan Ernest, and the Kesters were to retain the care and custody of the two girls, Cecilia Jane and Saundra Ray. Both the parties to the contract and Vera Potter, the mother, were to enjoy the right of visitation. The contract provided that the defendant pay as support money the sum of $10 per week instead of $15 as theretofore.

On March 25, 1948, Cecil Potter filed in said cause his amended application wherein he asked to be granted the permanent care and custody of the two girls. As grounds therefor he alleged, in substance, that the Kesters by reason of their extreme age and religious tenets were not qualified or fit to have the custody of the girls; that they were not shielded from companionship with Vera Potter, the mother, who exerted an unwholesome influence over them; that the girls and boys should not be separated, and that the applicant, who has remarried, was fit and in a position to maintain and support all four children in his home. The Kesters and Vera Potter filed a joint response wherein they denied the allegations of unfitness and misconduct on their part. And therein they affirmatively alleged that the applicant by reason of his misconduct and criminal instincts was not a fit person to have the custody of any of the children, and prayed that the court's order approving the custody as fixed by said contract be vacated and that the court, at its election, restore the custody of said children to the plaintiff, Vera Potter, as provided in the original decree or to the grandparents as provided by the first modification of the decree.

Upon hearing had on April 6, 1948, the court refused to disturb the existing situation as to custody but entered

an order requiring the Kesters to afford the girls in their custody proper medical attention where the state of their health was in question.

It is urged by plaintiff in error that the judgment of the court is against the weight of the evidence and that he should have been awarded the custody of the two daughters as prayed. The argument is presented under three captions: (1) the welfare of the children; (2) the rights of the parents; and (3) the rights of the grandparents.

The evidence fails to establish that the girls were neglected in the home of the grandparents or that they were subjected to unwholesome influence by the mother. The only fact pertinent thereto that demanded and received the serious attention of the court was the religious belief of the grandparents in faith healing. The grandmother testified, however, that in cases of sickness a doctor had been called. She further declared that she would be governed in the future entirely by the order of the court. The trial court was justified in relying thereon.

Pertinent to a consideration of the argument touching the respective rights of the parents and those of the grandparents is the conduct of the parents prior to the time of the order in question. The divorce was granted upon the ground of defendant's adultery and nonsupport of his wife and children. On deserting his wife and children Cecil Potter unlawfully appropriated to his own use two trucks and other property not his own, then located at Picher, Oklahoma, the place of his residence, and took same to Vinita, Oklahoma, where he used same in business and during the time lived with a woman in illicit sexual relations. This situation continued after the divorce and during the period in which he failed, as stated, to pay the support money directed in the original decree. Later, he and the said woman were married and thereafter affiliated with the Baptist Church of which they were members at the time said hearing was had.

The evidence reflects that prior to the divorce the conduct of Vera Potter, the mother, was exemplary, but thereafter and during the period in which Cecil Potter failed to pay the support money she became a frequenter of pool halls, attended dances and drank intoxicating liquors. And it was by reason thereof the court placed the custody of the children with the grandparents and denied the mother any control of or extended association with them. There is, however, no evidence of immoral sexual relations on the part of the mother, and the court expressly so found. The court further found that the wayward conduct of the mother was to be ascribed to the desperation arising from the defendant's conduct. It further appears from the evidence that prior to said hearing the mother had obtained employment at which she was regularly engaged and that while she still attended dances she had discontinued drinking intoxicants and no longer frequented pool halls.

As establishing the right of the father in the premises, reliance is placed upon Lynch v. Poe, 53 Okla. 595, 157 P. 907, and other cases wherein we said the following:

"In a contest between the father and the grandparents, in order to deprive the father of the custody of his child, it must be shown that his condition in life, or his character and habits, are such that provision for the child's ordinary comfort and contentment or for its intellectual and moral development cannot be reasonably expected at the parent's hands.", or that in substance.

And from Scroggin v. Griffin, 185 Okla. 456, 94 P. 2d 244, he quotes the following:

"In order to justify a court in depriving a parent of the care and custody of his child, the evidence offered to establish the unfitness of the parent must be clear and conclusive, and sufficient to show the necessity for so doing to be imperative."

The quoted doctrine can have application only where the inherent right of

the parent is attended with a presumption which must be overcome. It is not controlling herein. The doctrine and exceptions thereto are recognized and stated in Hamann v. Meisner, 148 Okla. 50, 297 P. 252:

" . . . The law presumes that a parent is the proper person to have the care and custody of his minor child, and it is for the best interest of the child that those near and dear to it by ties of blood take care of it and give it the best opportunity to make a good citizen.

"However, this presumption of the law has exceptions. . . .

"The weight of authority is that when a parent has, either by abandonment or contract, surrendered his present legal right to the custody of his child, in all controversies subsequently arising respecting its custody, the matter of primary importance is the interest and welfare of the child. To this the right of the parent must yield."

See, also, Taylor v. Taylor, 182 Okla. 11, 75 P. 2d 1132; Garlin v. Garlin, 154 Okla. 230, 7 P. 2d 463.

In the instant case the father's erstwhile unfitness was conclusively established by his deliberate repudiation of every parental obligation. The presumption relied on no longer obtains and the burden of proof is upon the father to not only establish his fitness but also that his custody of the girls would be to their best interest. The present custody of the children was entered into at the father's instance. Apparently at the time he thought the arrangement was for the best interest of the children and he subordinated his rights thereto. In Garlin v. Garlin, supra, it is said in effect that an order awarding custody to maternal grandparents, pursuant to agreement between divorced father and mother, should not be disturbed except for best interests of child.

There is nothing in the evidence to indicate the need of a change in the existing custody. In the Garlin case we said:

"Awarding the care and custody of the child is in the sound discretion of the trial court, and will not be disturbed by this court on appeal unless the judgment of the trial court is clearly against the weight of the evidence."

Judgment affirmed.

ARNOLD, V. C. J., and CORN, LUTTRELL, HALLEY, and O'NEAL, JJ., concur.